IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TERRY H.[1],

        **Plaintiff,**

                                          **Civil Action 2:22-cv-2493**
   **v.**                                  **Magistrate Judge Elizabeth P. Deavers**

COMMISSIONER OF
SOCIAL SECURITY,

        **Defendant.**

## OPINION AND ORDER

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final decision of the

Commissioner of Social Security ("Commissioner") denying his application for social security

disability insurance benefits. This matter is before the Court for on Plaintiff's Statement of

Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 11), Plaintiff's

Reply (ECF No. 12), and the administrative record (ECF No. 8). For the reasons that follow, the

Court **REVERSES** the Commissioner of Social Security's nondisability finding and

**REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff protectively filed his application for benefits on September 19, 2019, alleging

that he has been disabled since October 10, 2018, due to including blood poisoning; neuropathy;

an unusable left hand; a nonfunctioning right hand; diabetes; and cellulitis. (R. at 126-127, 157.)

Plaintiff's application was denied initially in January 2020 and upon reconsideration in June

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

2020.  (R. at 71-83, 85-98.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 99-100.)  Administrative law judge Deborah F. Sanders (the "ALJ") held a telephone hearing on January 21, 2021, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 36-69.)  A vocational expert ("VE") also appeared and testified.  (*Id.*)  On February 19, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-35.)  The Appeals Council granted Plaintiff's request for review, and remanded the matter for further proceedings.  (R. at 1-6.)  This matter is properly before this Court for review.

## II.      RELEVANT RECORD EVIDENCE

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to his conditions and resulting limitations.  Given the claimed error raised by Plaintiff, rather than summarizing that information here, the Court will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III.     ADMINISTRATIVE DECISION

On February 19, 2021, the ALJ issued her decision.  (R. at 12-35.)  The ALJ first found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2020.  (R. at 17.)  Then, at step one of the sequential evaluation process,[2] the ALJ found that

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.      Is the claimant engaged in substantial gainful activity?
    2.      Does the claimant suffer from one or more severe impairments?
    3.      Do the claimant's severe impairments, alone or in combination, meet or

Plaintiff engaged in substantial gainful activity during June and July of 2019, but that there had

been a continuous 12-month period during which Plaintiff did not engage in substantial gainful

activity. (*Id.*) Accordingly, the ALJ's remaining findings addressed the period during which

Plaintiff did not engage in substantial gainful activity. (R. at 18.) The ALJ found that, through

the date last insured, Plaintiff had the following severe impairments:  diabetes mellitus with

peripheral neuropathy; hypertension; impingement syndrome of the right shoulder; carpal tunnel

syndrome; obesity; and recurrent skin infection/abscess. (*Id.*) The ALJ further found that,

through the date last insured, Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the listed impairments

described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity

("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that, through the
> date last insured, [Plaintiff] had the residual functional capacity to perform light
> work as defined in 20 CFR 404.1567(b) except [Plaintiff] could lift/carry 20 pounds
> occasionally and 10 pounds frequently. He could stand/walk about 6 hours out of
> an 8-hour workday and could sit for about 6 hours out of an 8-hour workday. He
> could frequently climb ramps and stairs, but could not climb ladders, ropes, and
> scaffolds. [Plaintiff] could frequently stoop, kneel, crouch, and crawl. He should
> avoid exposure to unprotected heights. He should avoid dirty environments such as
> outdoor jobs, such as a trash collector or working in landfills. [Plaintiff] should

---

           equal the criteria of an impairment set forth in the Commissioner's Listing of
           Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's residual functional capacity, can the claimant
           perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and residual
           functional capacity, can the claimant perform other work available in the national
           economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

avoid operating a motor vehicle. He could frequently handle and finger. [Plaintiff] could occasionally reach overhead with the right upper extremity.

(R. at 20.)

Relying on the VE's testimony, the ALJ concluded at step four of the sequential process, that, through the date last insured, Plaintiff was unable to perform his past relevant work as a tool clerk, auto parts warehouse worker, or a landscaper.  (R. at 29.)  At step five, the ALJ determined that through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could have performed such as a mailroom clerk, bench assembler or office helper.  (R. at 29-30.)  The ALJ therefore concluded that Plaintiff has not been disabled at any time from October 10, 2018, the alleged onset date, through March 31, 2020, the date last insured.  (R. at 30.)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.  ANALYSIS

In his Statement of Errors, Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence from Dr. Fred Carroll, Plaintiff's treating physician, and Ms. Kirkhope, CNP, Plaintiff's treating Nurse Practitioner.  (ECF No. 9 at PAGEID ## 1200-1206.) Specifically, Plaintiff argues that under the new regulations regarding the ALJ's consideration of opinion evidence, "the ALJ has a duty to consider the supportability and consistency factors," but here "the ALJ failed to discuss the supportability factor."  (ECF No. 12 at PAGEID # 1221.)  For the reasons discussed below, Plaintiff's argument is well taken.

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file.  *Id*.  The

governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).  Objective medical evidence is defined as "medical signs, laboratory findings, or both."  20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3).  "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
> > (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> >
> > (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

---

[3] Plaintiff's application was filed after March 27, 2017.  (R. at 234-246.)  Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c.  These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency.  20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  Indeed, the regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors.  *Id.*  If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors.  20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3).  In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how she evaluated each opinion or finding individually but must instead articulate how she considered the opinions or findings from that source in a single analysis using the five factors described above.  20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1).  Finally, the regulations explain that the SSA is not required

to articulate how it considered evidence from non-medical sources.  20 C.F.R. §§ 404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2).  In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence."  *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

Against that background, the ALJ analyzed Dr. Carroll and Ms. Kirkhope's jointly-signed September 5, 2019 opinion as follows:

> The letter contained [Plaintiff's] impairments/diagnosed medical conditions and listed symptoms [Plaintiff] experienced, **largely based upon [Plaintiff's] subjective reports**, that were associated with the medical diagnoses. The providers opined [Plaintiff] was unable to resume any type of gainful employment due to his physical impairments. Further, they opined [Plaintiff's] neuropathic condition was

not curable and likely to decline over time. Additionally, they cited [Plaintiff] was likely to experience recurrent skin infections. Here, it should be noted the opinion regarding the neuropathic condition and recurrence of skin infections were speculative. The progression of [Plaintiff's] neuropathic condition **was not objectively noted in the record**. The statement citing [Plaintiff] would experience recurrent skin infections is speculative. **The record shows** [Plaintiff] has intermittent abscesses and cellulitis requiring acute treatment; however, **the record supports** the symptoms resolve with the acutely provided treatment modalities and use of antibiotics. Additionally, [Plaintiff] testified his abscesses generally only occur when he experiences increases in his blood sugar level associated with diabetes. **The undersigned finds because such statements are speculative regarding future treatment and future condition severity[,] they are less persuasive.** The undersigned finds the opinion citing an inability to perform gainful employment inherently unpersuasive in accordance with 20 CFR 404.1520(b)(c) and 416.920(b)(c).

(R. at 28 (emphasis added).)

Plaintiff argues that in finding these opinions to be "less persuasive," the ALJ "failed to address either one of the mandatory factors." (ECF No. 9 at PAGEID # 1202.)  In his Reply brief, however, Plaintiff concedes that the ALJ addressed the consistency factor, but insists that "the ALJ failed to discuss the supportability factor." (ECF No. 12 at PAGEID # 1221.)  In support, Plaintiff argues that "[t]he Commissioner seems to suggest that the ALJ considered this factor by claiming that the opinions were based on [Plaintiff's] subjective remarks," but that doing so "is not a proper consideration of the supportability factor." (*Id.* at PAGEID ## 1221-1222.)

As a threshold matter, Plaintiff is incorrect on this point, as a claimant's subjective complaints can provide an adequate basis for an ALJ to discount the supportability of an opinion. *Hutchison v. Kijakazi*, No. 3:21-CV-211-DCP, 2022 WL 4388285, at *6 (E.D. Tenn. Sept. 22, 2022) ("The fact that a medical source's opinion is based primarily on a claimant's subjective complaints and reported symptoms is an adequate basis for discounting the supportability of the opinion.") (citing *Owens v. Comm'r of Soc. Sec.*, No. 3:20-CV-01737, 2021 WL 8342841, at *6

(N.D. Ohio Sept. 15, 2021) ("The ALJ was entitled to discredit Dr. Onamusi's opinion for relying on such [subjective] complaints **as long as he explained his finding** . . . .  As such, the ALJ satisfied the requirement of discussing the supportability of Dr. Onamusi's opinion.") (emphasis added); *Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL 2841707, at *9 (N.D. Ohio Feb. 3, 2020), *report and recommendation adopted*, 2020 WL 2839654 (N.D. Ohio June 1, 2020) (finding "the ALJ's determination that Dr. Wagner's opinion appeared largely based on [claimant's] subjective reports goes to supportability and consistency" to be an appropriate basis for discounting an opinion)).  But when doing so, the ALJ must still explain how the claimant's subjective reports relate to the opinion.  And here, the ALJ failed to do so.

While it is true that the ALJ's discussion of Dr. Carroll and Ms. Kirkhope's opinion references Plaintiff's "impairments/diagnosed medical conditions and listed symptoms [Plaintiff] experienced, ***largely based upon [Plaintiff's] subjective reports***, that were associated with the medical diagnoses," the ALJ did not identify those subjective reports, let alone address their supportability.  (R. at 28 (emphasis added).)  This oversight is critical, because Dr. Carroll and Ms. Kirkhope's letter cites multiple pieces of objective medical evidence – including Plaintiff's limited range of motion of the shoulder, weakness of Plaintiff's hand and grip strength, carpal tunnel in Plaintiff's right hand, and weakened grip strength upon examination – before concluding that Plaintiff is "unable to resume any type of gainful employment due to his physical health impairments."  (R. at 652.)[4]

---

[4] The ALJ's decision suggests that Dr. Carroll and Ms. Kirkhope opined that Plaintiff was unable to work due to his recurrent skin infections. (R. at 28.)  This suggestion, however, mischaracterizes the opinion, which actually indicates that Plaintiff's skin infections, ulcerations, and abscesses "would make maintaining gainful employment difficult," not impossible. (R. at 652.)  Instead, Dr. Carroll and Ms. Kirkhope's ultimate opinion rests on Plaintiff's physical health impairments related to his peripheral neuropathy, not his skin conditions.  (*Id.*)

The ALJ's decision is silent as to these objective findings, however, as the ALJ ignored them before concluding that "the opinion regarding the neuropathic condition . . . [was] speculative."  (R. at 28.)  To the extent the ALJ noted that Plaintiff's subjective reports regarding "[t]he progression of [Plaintiff's] neuropathic condition" were not "objectively noted in the record," this goes to the consistency of the opinion, not its internal supportability, as this compares Plaintiff's subjective reports to the rest of the record.  As noted, Dr. Carroll and Ms. Kirkhope cited objective evidence underlying their opinion regarding Plaintiff's inability to work related to his neuropathic condition, but the ALJ chose not to address that evidence.  This constitutes error.

Additionally, or perhaps alternatively, the Commissioner argues that the ALJ "cited to evidence of record from Dr. Carroll and Ms. Kirkhope's practice . . . showing that [s]he reviewed Dr. Carroll's and Ms. Kirkhope's documentation for supporting evidence and the rest of the record for consistency."  (ECF No. 11 at PAGEID # 1216.)  But this argument misses the mark too, because while it is true that the ALJ's seventeen (17) page report does cite to Dr. Carroll's and Ms. Kirkhope's medical records, the ALJ did not cite to any such records in her one-paragraph evaluation of Dr. Carroll's and Ms. Kirkhope's opinion.  (*See* R. at 28.)  In the absence of any citations to the medical records, any specific discussion of Plaintiff's actual subjective complaints, or any analysis of Dr. Carroll or Ms. Kirkhope's relevant objective medical findings, the Court cannot conclude that the ALJ properly discussed the supportability of Dr. Carroll or Ms. Kirkhope's opinions.

---

Nevertheless, the ALJ properly discounted the opinion in this regard because a medical source's opinions about whether an individual is disabled or unable to work are administrative findings that are reserved to the Commissioner.

Given this, it is well settled that the ALJ's failure to discuss the supportability of Dr. Carroll and Ms. Kirkhope's opinions requires remand, because "without fuller explanation, this court cannot engage in meaningful review of the ALJ's decision." *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021)); *see also Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In the absence of a sufficient explanation of supportability and consistency with the record as a whole, the Court cannot conclude that the ALJ's consideration of Dr. Rush's opinion is supported by substantial evidence . . . . Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze Dr. Rush's medical opinions pursuant to 20 C.F.R. § 404.1520c."). Accordingly, Plaintiff's assignment of error is well taken, and the judicial inquiry ends.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 9) is **GRANTED.** The decision of the Commissioner is therefore **REVERSED** and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this case pursuant to sentence four of 42 U.S.C. § 405(g).

   **IT IS SO ORDERED.**


Date: March 7, 2023                              /s/ *Elizabeth A. Preston Deavers*
                                                 **ELIZABETH A. PRESTON DEAVERS**
                                                 **UNITED STATES MAGISTRATE JUDGE**

12